1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   FLUKE ELECTRONICS                    CASE NO. C12-2082JLR
     CORPORATION,

11                                         ORDER DENYING
                        Plaintiff,        DEFENDANTS' MOTION TO
12                                         DISMISS AND PLAINTIFF'S
              v.                           MOTION FOR EXPEDITED
13                                         DISCOVERY
     CORDEX INSTRUMENTS, INC., et
14   al.,

15                      Defendants.

16                    **I.      INTRODUCTION**

17        Before the court are (1) Defendants CorDEX Instruments, Inc. ("CorDEX"), Scott

18   Lang, and Gregg Purple's motion to dismiss the complaint for lack of personal

19   jurisdiction and improper venue (Dkt. # 12), and (2) Plaintiff Fluke Electronics

20   Corporation's ("Fluke") motion for expedited discovery (Dkt # 9).  The court has

21   considered the motions, all of the parties' submissions filed in support and opposition

22

ORDER- 1

1    thereto, the balance of the record, and the applicable law.[1]  Being fully advised, the court

2    DENIES Defendants' motion to dismiss and Fluke's motion for expedited discovery.

3                              **II.      BACKGROUND**

4              The following facts are taken from the complaint and are presumed to be true for

5    purposes of the motion to dismiss.  Fluke manufactures, distributes, and services

6    electronic test tools and software.  (Compl. (Dkt. # 1) ¶ 15.)  Although its headquarters

7    are in Everett, Washington, Fluke has offices throughout the world.  (*Id.* ¶ 17.)  Part of

8    Fluke's business includes a market segment known as thermography, or the study of the

9    radiation emitted by objects.  (*Id.* ¶ 21.)

10             In December 2008, Fluke acquired Hawk IR ("Hawk"), a British company

11   involved in the manufacture and sale of thermal windows designed for infrared inspection

12   of switchgear boxes, as well as the camera designed to aid in such inspections.  (*Id.*  ¶¶ 1,

13   28.)  Prior to its acquisition of Hawk IR, Fluke manufactured and sold thermal imaging

14   cameras to the thermography market segment, which allowed technicians to study and

15   isolate problems in visible locations.  (*Id.* ¶ 22.)  In some circumstances, however, such

16   as with switchgears or transformers, a technician may not be able to access a trouble spot

17   safely.  (*Id.*)  Using intelligent infrared windows, or IR windows, a technician can take

18   infrared readings without entering a potentially dangerous location.  (*Id.*)  Thus, in 2008,

19   Fluke identified the IR window as a natural addition to its product line, which culminated

20   in the purchase of Hawk in December 2008, including all of Hawk's assets and

21   _____

22       [1] No party has requested oral argument, and the court deems it to be unnecessary with
     respect to the disposition of the referenced motions.

ORDER- 2

intellectual property.  (*Id.* ¶¶ 25, 28.)  Fluke also retained key Hawk employees including

Hawk's owner/operator, Tony Holliday, and Defendants Lang and Purple, who were

retained as sales managers.  (*Id.* ¶¶ 27, 31, 53.)  Defendants Lang and Purple entered into

non-solicitation/non-competition and confidentiality agreements with Fluke.  (*Id.* ¶¶ 54-56.)

Fluke alleges that Mr. Holliday never intended to actually let go of the business he

had developed in Hawk.  (*Id.* ¶ 2.)   Instead, Fluke alleges that Mr. Holliday immediately

began efforts to create a new business with his former outside counsel, Gary Copeland, to

compete with Hawk and offer the same products.  (*Id.* ¶¶ 2, 48-52.)  Fluke also alleges

that Mr. Holliday made little effort to expand Fluke's business during his three-year

contract with Fluke.  (*Id.* ¶ 2, 37-46.)  Within two months Fluke's purchase of Hawk, Mr.

Copeland had formed CorDex which manufactured photographic and cinematographic

equipment.  (*Id.* ¶ 50.)

In 2011, Mr. Holliday's employment with Fluke ended.  (*See id.* ¶¶ 44-47, Ex. A.)

Almost immediately after leaving Fluke, CorDEX appointed Mr. Holliday to the position

of Managing Director.  (*Id.* ¶ 52.)  Fluke alleges that Mr. Holliday was working behind

the scenes during his employment with Fluke to recreate the thermal IR window market

for CorDEX using Fluke's intellectual property thereby undercutting the business he sold

to Fluke.  (*Id.* ¶ 5, *see id.* ¶¶ 62-67.)  In addition, Mr. Holliday recruited Mr. Lang and

Mr. Purple from Fluke, despite knowing that they had signed non-compete and

confidentiality agreements which prohibited them from engaging in the activity for which

Mr. Holliday hired them.  (*Id.* ¶ 6, *see id.* ¶¶ 66-67.)

1    Fluke filed suit against CorDEX, Mr. Lang, and Mr. Purple on November 28,

2    2011.  (*See generally id.*)  In its complaint, Fluke asserts causes of action for

3    misappropriation of trade secrets against all defendants (*id.* ¶¶ 68-76), interference with

4    prospective business advantage against CorDEX and Mr. Purple (*id.* ¶¶ 77-82), and

5    breach of contract against Mr. Purple and Mr. Lang (*id.* ¶¶ 83-88).

6    On December 6, 2012, Fluke moved for expedited discovery against CorDEX.

7    (*See generally* Disc. Mot. (Dkt. # 9).)  Defendants did not immediately respond to

8    Fluke's motion.  Rather, on December 21, 2012, Defendants filed their own motion for

9    dismissal based on lack of personal jurisdiction and venue.  (*See generally* Mot. to

10   Dismiss (Dkt. # 12).)  Fluke timely responded to Defendants' motion to dismiss.  (Resp.

11   (Dkt. # 14).)  Defendants ultimately filed a response to Fluke's motion for expedited

12   discovery on January 29, 2012.  (Disc. Resp. (Dkt. # 20).)[2]

13                                    **III.    ANALYSIS**

14   **A.  Personal Jurisdiction**

15       As Plaintiff, Fluke bears the burden of establishing that personal jurisdiction exists

16   with respect to Defendants.  *See, e.g.*, *Zigler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th

17   ─────────────────────

18       [2]Defendants assert that Fluke did not properly serve its motion for expedited discovery
     and accordingly Defendants were under no obligation to respond.  (Disc. Resp. at 1, n.1.)

19   Defendants nevertheless did ultimately respond "because they would prefer to move forward and
     resolve this issue on the merits."  (*Id.*)  Fluke disputes Defendants' assertions concerning

20   improper service and argues that Defendants' response was due no later than December 12,
     2012.  (Disc. Reply (Dkt. # 23) at 2. n.2.)  Because Defendants' response was untimely (in

21   Fluke's view), Fluke asserts that Defendants' response should be struck.  (*Id.*)  Fluke, however,
     has had an opportunity to file a reply memorandum to Defendants' response.  (*See generally id.*)

22   Thus, even assuming Defendants filed their response late, Fluke has suffered no prejudice.
     Accordingly, the court exercises its discretion to consider Defendants' responsive memorandum
     and other submissions.

Cir. 1995).  Because the court is resolving the motion to dismiss without holding an

evidentiary hearing,[3] Fluke "need make only a prima facie showing of jurisdictional facts

to withstand the motion."  *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, --- F.3d ----, 2012

WL 6582345, at *2 (9th Cir. 2012); *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.

1995).  That is, Fluke "need only demonstrate facts that if true would support jurisdiction

over [Defendants]." *Id.*; *see Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d

1082, 1085 (9th Cir. 2000) ("Where . . . the district court does not hold an evidentiary

hearing but rather decides the jurisdictional issue on the basis of the pleadings and

supporting declarations, we will presume that the facts set forth therein can be proven.").

    In addition to Fluke's complaint, the parties have submitted affidavits both in

support and opposition to the motion.  (*See, e.g.*, Maday Aff. (Dkt. # 15); Purple Aff.

(Dkt. # 12-1 (Ex. A)); Lang Aff. (Dkt. # 12-1(Ex. B)); Holliday Aff. (Dkt. # 12-1(Ex.

C)); Purple Aff. II (Dkt. # 17-1).)  In determining whether Fluke has met its burden of

making a prima facie showing of jurisdictional facts, the court considers uncontroverted

allegations in Fluke's complaint as true, and resolves conflicts between facts contained in

the parties' affidavits in Fluke's favor.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th

Cir. 2001); *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

    Because there is no federal statute that governs personal jurisdiction in this case,

Washington State's long-arm rule applies.  *Wash. Shoe*, --- F.3d ---, 2012 WL 6582345,

at *2.  Washington's long-arm statute extends jurisdiction over a defendant to the fullest

---

[3] No party has requested an evidentiary hearing.

ORDER- 5

1   extent permitted by the Due Process Clause of the Fourteenth Amendment.  *Id.* (citing

2   RCW 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989)).  Because

3   Washington's long-arm jurisdictional statute is coextensive with federal due process

4   requirements, the jurisdictional analysis under state law and with respect to federal due

5   process are the same.  *AT & T Co. v. Compagnie Briaelles Lambert*, 94 F.3d 586, 588

6   (9th Cir. 1996).  "The relevant question, therefore, is whether the requirements of due

7   process are satisfied by the exercise of personal jurisdiction over [Defendants] in

8   Washington."  *Id.*   Federal due process requires that a defendant have sufficient

9   minimum contacts with the forum state that the exercise of personal jurisdiction will not

10  offend traditional notions of fair play and substantial justice.  *See Int'l Shoe Co. v.*

11  *Washington*, 326 U.S. 310, 316 (1945).

12          Fluke does not attempt to argue that the court may exercise general personal

13  jurisdiction over Defendants.  (*See* Resp. at 6.)  "For general jurisdiction to exist, a

14  defendant must engage in 'continuous and systematic general business contacts,' . . . that

15  'approximate physical presence' in the forum state."  *Marvix Photo, Inc. v. Brand*

16  *Technologies, Inc.*, 647 F.3d 1218, 1223-24 (9th Cir. 2011) (quoting *Helicopteros*

17  *Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Bancroft & Masters,*

18  *Inc.*, 223 F.3d at 1086).  "The standard for general jurisdiction 'is an exacting standard, as

19  it should be, because a finding of general jurisdiction permits a defendant to be haled into

20  court in the forum state to answer for any of its activities anywhere in the world.'"  *Id.* at

21  1224 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir.

22  2004)).  Fluke acknowledges that Defendants' contacts with Washington State are not "so

ORDER- 6

1   substantial, continuous and systematic that [Defendants] can be deemed to be present in

2   the forum for all purposes." (Resp. at 6 (quoting *Menken v. Emm*, 503 F.3d 1050, 1057

3   (9th Cir. 2007).)

4       Rather, Fluke asserts that the relationship between Defendants' forum contacts and

5   Fluke's claims provides a basis for the court's exercise of specific personal jurisdiction.

6   (Resp. at 6.) The Ninth Circuit applies a three-part test for specific jurisdiction. Specific

7   personal jurisdiction exists if (1) the defendant purposefully directs his activities or

8   consummates some transaction with the forum or a resident thereof, or performs some act

9   by which he purposefully avails himself of the privileges of conducting activities in the

10  forum, thereby invoking the benefits and protections of its laws, (2) the claim arises out

11  of or relates to the defendant's forum-related activities, and (3) the exercise of

12  jurisdiction is reasonable. *See, e.g.*, *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d

13  1066, 1076 (9th Cir. 2011); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-

14  76 (1985). Fluke bears the burden of establishing the first two prongs. *CollegeSource,*

15  *Inc.,* 653 F.3d at 1076. The burden then shifts to Defendants to set forth a "compelling

16  case" that the exercise of jurisdiction would be unreasonable. *Id.* (quoting *Rudzewicz*,

17  471 U.S. at 476-78). The court will address each of the three factors.

18      **1.  Purposeful Activities or Direction**

19      The first prong of the specific personal jurisdiction test refers to both purposeful

20  direction and purposeful availment. Although often "clustered together under a shared

21  umbrella," purposeful availment and purposeful direction "are, in fact, two distinct

22  concepts." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir.

ORDER- 7

1   2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)).  A

2   purposeful availment analysis is most often used in suits sounding in contract, and a

3   purposeful direction analysis is used in suits sounding in tort.  *Schwarzenegger*, 374 F.3d

4   at 802.  Fluke has brought intentional tort claims against all three defendants, including

5   misappropriation of trade secrets against all Defendants (Compl. ¶¶ 68-76) and

6   interference with prospective business advantage against CorDEX and Mr. Purple (*id.* ¶¶

7   77-82).  Fluke has asserted a breach of contract claim against only Mr. Purple and Mr.

8   Lang (*id.* ¶¶ 83-88).  Accordingly, the court considers the purposeful direction analysis.[4]

9        In tort cases, the court inquires whether a defendant purposefully directs his

10  activities at the forum state and applies an "effects" test that focuses on the forum in

11  which the defendant's actions were felt, whether or not the actions themselves occurred

12  within the forum.  *CollegeSource*, 653 F.3d at 1077.  The "effects" test requires that "the

13  defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at

14  the forum state, (3) causing harm that the defendant knows is likely to be suffered in the

15  forum state."  *Id.* (citing *Brayton Purcell*, 606 F.3d at 1128).

16       **a.   Intentional Acts**

17       The first element of the effects test, the "intentional act" requirement, "refer[s] to

18  an intent to perform an actual, physical act in the real world, rather than an intent to

19  accomplish a result or consequence of that act."  *Brayton Purcell*, 606 F.3d at 1128.

20

21       [4] The court notes that the first prong is satisfied by a finding of either purposeful

22  availment or purposeful direction.  *See Brayton Purcell*, 606 F.3d at 1128.

1    Fluke has alleged that CorDEX "is utilizing [Fluke's] confidential information regarding

2    sales opportunities in the Houston market to interfere with prospective Fluke business,

3    targeting a customer about which CorDex would not have known but for its improper

4    hiring of Purple and Lang and using formation gained from those gentlemen related to

5    that opportunity." (Compl. ¶ 67.) In addition, Fluke alleges that "CorDex, Purple and

6    Lang have improperly gained access to [Fluke's] confidential and proprietary information

7    and threaten[ed] to use, or ha[ve] actually used, Fluke's trade secrets." (*Id.* ¶ 71.)

8    Further, Fluke alleges that "CorDex and Purple intentionally and without justification

9    contacted and induced Fluke's existing and potential customers to not contract with

10   Fluke, but with CorDex, and attempted to divert that business and those contractual

11   arrangements to [their own] benefit . . . ." (*Id.* ¶ 81.) Such allegations satisfy the first

12   prong of the effects test.

13        Defendants assert that "[t]here is neither allegation nor evidence to suggest that

14   Lang and Purple learned any of the alleged trade secrets in Washington State." (Mot. to

15   Dismiss at 12.) Further, Defendants asserts that "any alleged misuse of Fluke's trade

16   secrets would have occurred, if at all, . . . where Purple and Lang currently live and

17   work," specifically in Texas and Illinois. (*Id.*) Contrary to Defendants' argument, there

18   is no requirement that the alleged intentional act occurs within Washington. *See, e.g.*,

19   *Sleep Science Partners v. Lieberman*, No. C 09-04200 CW, 2009 WL 4251322, at *3

20   (N.D. Cal. Nov. 23, 2009) ("[T]he effects test does not require that the intentional act be

21   committed in the forum, only that the wrongful conduct individually target a known

22   forum resident.") (citing *Bancroft & Masters*, 223 F.3d at 1087; *Brainerd v. Governors of*

*the Univ. of Alberta*, 873 F.2d 1257, 1259-60 (9th Cir. 1989) (holding that Arizona court had jurisdiction over Canadian residents who, in response to calls directed at them in Canada, made defamatory statements about a person they knew resided in Arizona)). Thus, the court finds that Fluke has met its burden with respect to the first prong of the effects test – that each defendant has committed an alleged intentional act. *See, e.g.*, *Glud & Marstrand A/S v. Microsoft Corp.*, No. C05-01563RSM, 2006 WL 2380717, at *5 (W.D. Wash. Aug. 15, 2006) (plaintiff satisfied the "intentional act" requirement of the effects test by alleging that defendant disclosed plaintiff's proprietary information after agreeing to keep it confidential); *Menken,* 503 F.3d at 1059 (plaintiff satisfied intentional act requirement by alleging that defendant intentionally interfered with plaintiff's contractual relations).

Defendants nevertheless argue that Fluke cannot establish that CorDEX committed an intentional act because CorDEX "exists solely to facilitate payroll to employees of CorDEX Ltd. in the United States and to receive payments on behalf of CorDEX Instruments Ltd." (Holliday Aff. (Dkt. # 12-1) ¶ 3.)  After leaving Fluke, Mr. Lang and Mr. Purple state that they began working not for CorDEX Instruments, Inc. (the named defendant in this action), but rather for CorDEX Instruments, Ltd.  (*See* Purple Aff. (Dkt. # 12-1) ¶¶ 6, 16-17; Lang Aff. (Dkt. # 12-1) ¶¶ 6, 15-17.)  Defendants provide testimony that the named defendant—CorDEX Instruments, Inc.—has no employees, sells no products, maintains no contacts with distributors, has no customers or potential customers, does not solicit business, does not earn revenue, does not build or develop any

1    products, does not own intellectual property or equipment, and has never done business

2    in Washington State.  (*Id*. ¶¶ 4-18.)

3       In contravention of this testimony, Fluke provides an affidavit in which a Fluke

4    employee states that "Fluke learned that Cordex [Instruments, Inc.] is utilizing Fluke's

5    confidential information regarding sales opportunities . . . to interfere with prospective

6    Fluke business, targeting an employee about which Cordex would not have known but for

7    its improper hiring of Purple and Lang, and using information gained from those

8    gentlemen related to that opportunity."  (Maday Aff. (Dkt. # 15) ¶ 12.)[5]  In addition,

9    Fluke provides testimony that Cordex Instruments, Inc. "improperly gained access to

10   and/or utilized Fluke's confidential and proprietary information and threaten [sic] to use,

11   or have actually used such information to harm Fluke."  (Id. ¶ 13.)  Finally, Fluke also

12   provides testimony that "Cordex [Instruments, Inc.] . . . intentionally . . . contacted and

13   induced Fluke's existing and potential customers to not contract with Fluke, but with

14   Cordex [Instruments, Inc.], and attempted to divert that business and those contractual

15   —————————————————

16     [5] Defendants also argue that Mr. Maday's affidavit is inadmissible because it is not based solely on his personal knowledge.  (Reply (Dkt. # 17) at 6-7.)  Defendants assert that Mr.

17   Maday's entire affidavit is disqualified by the statement in paragraph four—that "[b]ased on my personal knowledge and on information that has been provided to me, the allegations contained in Fluke's Complaint are true and accurate."  (*Id.* (citing Maday Aff. ¶ 4).)  The court disagrees.

18   Although paragraph 4 of the affidavit may be inadmissible, the remainder of Mr. Maday's affidavit is not.  In paragraph one, Mr. Maday states, "If called as a witness in this case, I could

19   competently testify on personal knowledge to the facts below."  (Maday Aff. ¶ 1.)  Accordingly, Mr. Maday's statement in paragraph four concerning the basis of his knowledge qualifies his

20   statement in that paragraph only, but not his entire affidavit.  Mr. Maday's statement in paragraph one is sufficient to establish that he made the remainder of the statements in his

21   affidavit based on his personal knowledge.  Although the court disregards paragraph four of Mr. Maday's affidavit, it declines to accept Defendants' argument that the entirety of Mr. Maday's

22   affidavit is inadmissible.

1    arrangements . . . ." (*Id.* ¶ 14.)  Thus, the dueling affidavits provided by Fluke and

2    Defendants create disputed issues of fact, which in the context of this motion must be

3    decided in Fluke's favor.  *See Unocal Corp.*, 248 F.3d at 922.[6]

4                    **b.   Expressly Aimed at the Forum State**

5            The second prong of the effects test is that Defendants' acts must have been

6    expressly aimed at the forum state.  This requirement is satisfied "when the defendant is

7    alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant

8    knows to be a resident of the forum state."  *Washington Shoe*, --- F.3d ---, 2013 WL

9    6582345, at *5 ("We have repeatedly stated that the 'express aiming' requirement is

10   satisfied, and specific jurisdiction exists, when the defendant is alleged to have engaged

11   in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of

12   the forum state.") (internal quotations omitted) (citing *Dole Food Co. v. Watts*, 303 F.3d

13   1104, 1111 (9th Cir. 2002)); *see also Bancroft & Masters*, 223 F.3d at 1087 ("'[E]xpress

14   aiming' encompasses wrongful conduct individually targeting a known forum resident.");

15   *Menken*, 503 F.3d at 1059.

16           The Ninth Circuit has cautioned, however, that foreign acts with foreseeable

17   effects in the forum state do not always give rise to personal jurisdiction.  *Bancroft &*

18   *Masters*, 223 F.2d at 1087; *see also Schwarzenegger*, 374 F.3d at 804-5.

19   "Instead, . . .'something more' is required to establish that the defendant expressly aimed

20   _____

21          [6] In any event, without deciding the issue, the court notes that if Fluke has used a
     misnomer with respect to one of the parties, the issue may be more appropriately decided under
22   Federal Rule of Civil Procedure 15(c).

1    its conduct at the forum." *Medinah Mining, Inc. v. Amunategui*, 237 F.Supp.2d 1132,

2    1137 (D. Nev. 2002).  In order for the "express aiming" element of the effects test to be

3    satisfied, the defendant must know that the plaintiff is a resident of the forum state and

4    that the harm resulting from the intentional act will be suffered in the forum state.

5    *Bancroft & Masters*, 223 F.2d at 1087; *Medinah Mining*, 237 F.Supp.2d at 1137; *see also*

6    *Calloway Golf Corp. v. Royal Canadian Golf As''n*, 125 F. Supp. 2d 1194, 1200-01 (C.D.

7    Cal. 2000).

8           Fluke is a Washington corporation with its principal place of business and

9    headquarters located in Everett, Washington.  (Compl. ¶ 9; Maday Aff. ¶ 5.)  Thus, Fluke

10   is a resident of Washington State.  Both Mr. Purple and Mr. Lang, as former Fluke

11   employees, knew that Fluke was headquartered in Washington, knew that Fluke

12   conducted its business from Everett, Washington, and attended business meetings at

13   Fluke's Washington headquarters several times a year.  (Maday Aff. ¶¶ 8-9.)  Indeed,

14   both Mr. Purple and Mr. Lang have acknowledged traveling to Washington multiple

15   times during their employment with Fluke.  (Purple Aff. ¶ 13; Lang Aff. ¶ 13.)  Although

16   Mr. Lang and Mr. Purple may have worked in different parts of the country, the purpose

17   of their activities on behalf of Fluke was to generate sales and business to benefit Fluke in

18   Washington State.  (Maday Aff. ¶ 7.)  Further, Mr. Holliday, who is the Managing

19   Director of CorDEX, also attended a high level strategy meeting at Fluke's headquarters

20   in Washington State while he was employed by Fluke.  (Maday Aff. ¶ 8.)  Defendants'

21   prior employment dealings with Fluke demonstrate that they knew Fluke to be located in

22

1   Washington.  *See Sky Capital Grp., LLC v. Rojas*, No. 1:09–CV–00083–EJL, 2009 WL

2   1197956, at *5 (D. Idaho Apr. 30, 2009).

3          The allegations in this case are that Defendants accessed Fluke's proprietary

4   information and trade secrets while they (or in CorDEX's case while its current

5   employees or agents) were employed at Fluke and later used this information to

6   wrongfully compete with and inflict damage upon Fluke.  (*See generally* Compl. ¶¶ 1-8,

7   15-76.)  Defendants alleged actions were not merely contacts that could have foreseeable

8   effects in Washington; they were intentional and aimed at a specific Washington

9   company.  Defendants allegedly used their former employment (or the former

10  employment of CorDEX's current employees or agents) with a Washington company to

11  access that company's trade secrets and then use that information to compete with the

12  same Washington business.  If true, it was foreseeable that their conduct would harm

13  Fluke in Washington.  "A defendant's acts are purposefully directed at [the forum state]

14  if they were committed in order to compete against a plaintiff in [the forum state]."  *See*

15  *Alternative Legal Solutions, Inc. v. Ferman Mgmt. Servs., Corp.*, No. 07-880-ST, 2008

16  WL 65584, at *6 (D. Or. Jan. 4, 2008).  "For example, defendants [a]re subject to

17  personal jurisdiction in [the forum state] if they s[eek] to 'steal' confidential information

18  and 'use[] trade secrets wrongfully in their position as a direct competitor of plaintiff.'"

19  *Id.* (citing *Unicru, Inc. v. Brenner*, No. Civ. 04–248–MO, 2004 WL 785276, at *8 (D. Or.

20  Apr. 13, 2004)).  Thus, the court is persuaded that Fluke has sufficiently established for

21  purposes of responding to Defendants' motion to dismiss for lack of personal jurisdiction

22  that Defendants "engaged in wrongful conduct targeted at a plaintiff whom the

1  defendant[s] kn[ew] to be a resident of the forum state." *Washington Shoe Co.*,

2  --- F.3d ----, 2012 WL 6582345, at *5.[7]

3  ### c. Causing Harm in the Forum

4  Finally, Fluke must make a prima facie showing that Defendants' conduct "caused

5  harm that they knew was likely to be suffered" in Washington. *See Brayton Purcell*, 606

6  F.3d at 1131. This third prong "is satisfied when [a] defendant's intentional act has

7  foreseeable effects in the forum." *Id.* Fluke has alleged that it was injured in Washington

8  as a result of Defendants' alleged acts. (Compl. ¶ 14.) Further, as discussed above,

9  Defendants were aware that Washington State is Fluke's principal place of business. (*See*

10  Maday Aff. ¶¶ 8-9.) The Ninth Circuit has "repeatedly held that a corporation incurs

11  economic loss, for jurisdictional purposes, in the forum of its principal place of business."

12  *CollegeSource*, 653 F.3d at 1077 (citing *Dole Food*, 303 F.3d at 1113-14; *Panavision*

13  *Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 n. 2 (9th Cir. 1998); *Core-Vent Corp. v.*

14  *Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993)). In *Washington Shoe*, the Ninth

15  Circuit explained that the defendant "knew or should have known that the impact of its

16  willful infringement of [plaintiff's intellectual property] would cause harm to be suffered

17  in the forum" because the plaintiff's principal place of business was in Washington.

18  *Washington Shoe*, --- F.3d ---, 2012 WL 6582345, at *9; *see also Sky Capital Grp.*, 2009

19  _____

20  [7] *See also Brayton Purcell*, 606 F.3d at 1129-30 (finding the "express aiming" prong satisfied where a non-resident defendant knew of the plaintiff's existence in the forum state,

21  targeted plaintiff's business, and entered into direct competition with the plaintiff); *Montana Sivlersmiths, Inc. v. Taylro Brands, LLC*, 850 F. Supp. 2d 1172, 1182 (D. Mont. 2012) (finding

22  conduct was expressly aimed at Montana where defendants, two of plaintiff's former employees, misappropriated trade secrets from plaintiff, a Montana corporation).

1   WL 1197956, at *5.  Thus, the court concludes that Fluke has met its burden of

2   establishing that it suffered harm in Washington as a result of Defendants' alleged

3   misappropriation of trade secrets and tortious interference, and that such harm was

4   foreseeable.[8]

5   **2.   Claims Arise out of or Relate to Defendants' Forum Related Activities**

6        The second part of the test for specific personal jurisdiction directs that the court

7   must determine whether Fluke's claims "arise[] out of or relate[] to the defendant's

8   forum-related activities."  *Washington Shoe*, --- F.3d ----, 2012 WL 6582345, at *2.  To

9   do so, the Ninth Circuit has adopted a "but for" analysis.  *Gordon*, 680 F. Supp. 2d at

10  1286.  Thus, specific personal jurisdiction is proper only if "but for" Defendants' alleged

11  Washington-related activities, Fluke's injuries would not have occurred.  Based on the

12  discussion of the claims and Defendants' alleged conduct above, the court finds that

13  Fluke satisfies the second part of the test for specific personal jurisdiction for each

14  defendant.

15  **3.   Reasonableness of Exercising Jurisdiction**

16       The burden now shifts to Defendants to "present a compelling case" that the

17  exercise of jurisdiction over them would be "unreasonable and therefore violate due

18

19       [8] In their reply memorandum, Defendants assert a variety of arguments concerning the
    quality of Fluke's allegations or the sufficiency of its evidence in support of its claims.  (*See*
20  Reply at 3-5, 7-10.)  These issues go to the merits of Fluke's claims and are best resolved on a
    motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) or summary judgment
21  under Federal Rule of Civil Procedure 56.  *See Alternative Legal Solutions, Inc.*, 2008 WL
    65584, at *8.  The standard applicable to Defendants' motion to dismiss based on lack of
22  personal jurisdiction is different than either of those substantive motions, and as described in the
    body of this order, Fluke meets the applicable standard here.

1    process." *CollegeSource, Inc.*, 653 F.3d at 1079.  The court must determine whether the

2    exercise of jurisdiction is reasonable looking at seven factors:  (1) the extent of the

3    defendants' purposeful interjection into the forum state's affairs; (2) the burden on the

4    defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the

5    defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most

6    efficient judicial resolution of the controversy; (6) the importance of the forum to the

7    plaintiff's interest in convenient and effective relief; and (7) the existence of an

8    alternative forum.

9        Even though the court has already determined that Defendants purposefully

10   directed their alleged tortious conduct at Washington State, the degree of interjection is

11   nonetheless a factor in assessing the overall reasonableness of jurisdiction under this

12   prong.  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132

13   (9th Cir. 2003).  Defendants assert that any purposeful interjection into Washington

14   State's affairs was minor.  (*See* Mot. to Dismiss at 17-18.)  Defendants argue that "[a]t

15   best, the facts show only that the Defendants wished to live their lives and conduct their

16   ordinary business in other forums."  (*Id.* at 18.)  Defendants, however, are alleged to have

17   stolen trade secrets from a Washington company while either they or one of their current

18   employees were employed by that company.  Further, Defendants, or their agents, are

19   alleged to have travelled to Washington to attend meetings at the Washington company's

20   headquarters while Defendants (or an agent thereof) were employed by the Washington

21   company.  This type of activity is sufficient to find that this factor weighs in favor of

22   Fluke.  *See, e.g.*, *Alternative Legal Solutions, Inc.*, 2008 WL 65584, at *9 (finding that

1  purposeful interjection factor weighed in favor of plaintiff where defendants stole trade

2  secrets from forum company but had only one meeting in the forum state "which created

3  no continuing obligation with any [forum] residents," and had no other physical contact

4  with the forum state).[9]

5      Defendants also assert that the burden of proceeding in this forum is great because

6  Mr. Lang and Mr. Purple are individuals living in Texas and CorDEX is a small company

7  in comparison to Fluke.  (Mot. to Dismiss at 18.)  If this factor weighs in Defendants'

8  favor, it does so only slightly.  First, Defendants provide no evidence in support of this

9  argument despite bearing the burden on this issue.  Further, the Ninth Circuit has noted

10 that "modern advances in transportation and communications have significantly reduced

11 the burden of litigation in another country." *Harris Rutsky & Co. Ins. Servs., Inc.*, 328

12 F.3d at 1133.  Certainly, the burdens associated with litigating in another state are reduced

13 even more in light of our many modern conveniences.  Thus, to the extent Defendants

14 have demonstrated that this factor weighs in their favor, it does so only marginally.

15     Defendants assert that the factor involving conflict with the sovereignty of another

16 state weighs in their favor because the court may need to apply the law of another state or

17 impose injunctive relief with respect to out-of-state defendants.  Although this factor

18 might weigh somewhat in Defendants' favor, these are not issues with which federal

19

20     [9] Even if Defendants' contacts were too attenuated for this factor to weigh in Fluke's

21 favor, it would not weigh heavily in Defendants' favor given the court's finding that their contacts were sufficient to meet the purposeful direction prong.  *See Core-Vent Corp. v. Nobel Indus. AB*,

22 11 F.3d 1482, 1488 (9th Cir. 1993).

1  courts exercising diversity jurisdiction are unfamiliar.  Accordingly, to the extent this

2  factor weighs in Defendants' favor, similar to the previous factor, it does so only

3  marginally.

4          The fourth factor, the forum state's interest, decidedly favors Fluke. The Ninth

5  Circuit has indicated that a forum state has a strong interest in resolving the tort claims of

6  its residents.  *Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991); *see also*

7  *Meyers v. DCT Technologies, Inc.*, No. 11–cv–05595 RBL, 2012 WL 1416264, at *7

8  (W.D. Wash. Apr. 24, 2012).  Washington, therefore, has a strong interest in having

9  Fluke's tort claims resolved in this forum.

10         Defendants have failed to carry their burden with respect to the fifth factor—the

11  efficient resolution of the controversy.  Defendants argue that "Texas would provide a

12  convenient forum not only for all of the parties to this action, but also for the potential

13  witnesses Fluke's complaint implicates."  (Resp. at 19.)  Defendants assert that Mr. Lang

14  and Mr. Purple live in Texas and that Fluke maintains operations in Texas.  (*Id.*)

15  However, Defendants have provided no evidence of these facts to the court.  Fluke did

16  not address this factor, but because Defendants bear the burden of presenting a

17  "compelling case," the court cannot conclude that this factor weighs in Defendants'

18  favor.  At best, it is neutral.

19         The sixth factor, the importance of the forum to the plaintiff, decidedly favors

20  Fluke.  Washington State is Fluke's chosen forum and its headquarters are located here.

21  Finally, the seventh factor, the existence of an alternative forum, favors Defendants'

22

1   position.  Defendants assert, and Fluke does not dispute, that Texas is an available

2   alternative forum.

3        In sum, the court has found that Defendants have carried their burden only with

4   respect to factors two, three and seven, and only slightly with respect to factors two and

5   three.  Accordingly, on balance, the court concludes that Defendants have not

6   demonstrated a compelling case that the court's exercise of personal jurisdiction over

7   Defendants would be unreasonable or violate due process.[10]

8   **B.  Pendent Personal Jurisdiction**

9        Having established personal jurisdiction over Defendants with respect to Fluke's

10  tort claims, the court must also determine whether it has jurisdiction with respect to

11  Fluke's contract claim.  The Ninth Circuit has explicitly adopted the concept of pendent

12  personal jurisdiction.  *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1113 (9th

13  ────────────────

14       [10] In their reply memorandum, Defendants request for the first time jurisdictional
    discovery from Fluke "in order to offer the Court a more complete record."  (Reply at 12.)
15  Defendants, however, fail to explain what information they need that is in Fluke's possession
    (and not their own) with respect to personal jurisdiction, or how this additional information
16  might assist the court with respect to Defendants' motion.  In any event, "[t]he district court need
    not consider arguments raised for the first time in a reply brief."  *Zamani v. Carnes*, 491 F.3d
17  990, 997 (9th Cir. 2007).  Further, such a request must be brought as a motion, and not asserted
    in a reply memorandum, providing no opportunity to respond.  That being said, nothing prevents
18  Defendants from issuing discovery related to jurisdictional issues in the ordinary course of this
    litigation.  Should subsequent discovery reveal new evidence that is pertinent and not presently
19  before the court, the parties may bring such motions as are appropriate under the Federal Rules
    of Civil Procedure or raise the issue again at trial.  *See, e.g.*, *Fiore v. Walden*, 688 F.3d 558, 575
20  n.13 ("If the plaintiff succeeds in meeting that prima facie burden, then the district court may still
    order an evidentiary hearing or the matter may be brought up again at trial.");  *Metropolitan Life
21  Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990) (citing 5A C. Wright & A. Miller,
    *Federal Practice and Procedure* § 1373 at 557 (1990) ("The determination of a defense on a
22  motion prior to trial is not so final that it prevents the court from reconsidering its ruling at any
    time prior to judgment.")).

ORDER- 20

1   Cir. 2004).  Under this doctrine, "a defendant may be required to defend a 'claim for

2   which there is no independent basis of personal jurisdiction so long as it arises out of a

3   common nucleus of operative facts with a claim in the same suit over which the court

4   does have personal jurisdiction.'"  *Id.* (quoting *Action Embroidery v. Atlantic

5   Embroidery*, 368 F.3d 1174, 1180 (9th Cir. 2004)).  Whether to exercise pendent personal

6   jurisdiction is within the discretion of the district court.  *Id.*  Fluke's tort claims and its

7   claim for breach of contract arise from a common nucleus of operative facts.

8   Accordingly, the court finds that the exercise of pendent personal jurisdiction with

9   respect to Fluke's contract claim is appropriate here.

10      **C. Venue**

11      Venue is proper in the judicial district "in which a substantial part of the events or

12   omission giving rise to the claims occurred."  28 U.S.C. § 1391(b)(2).  Similar to their

13   arguments regarding lack of personal jurisdiction, Defendants assert that venue is

14   improper in the Western District of Washington under § 1391(b)(2) because "a

15   substantial portion of the events giving rise to Fluke's claims did not occur here."  (Mot.

16   to Dismiss at 21.)  The court disagrees.

17      As discussed above, Defendants alleged improper tortious actions were directed at

18   Fluke in the Western District of Washington.  (*See supra* § III.A.1.)  When determining

19   venue under 28 U.S.C. § 1391(b)(2), the Ninth Circuit has given substantial weight to

20   "the locus of the injury" allegedly caused by tortious actions.  *See, e.g.*, *Myers v. Bennett

21   Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (finding, where one of the plaintiffs'

22   alleged "harms" was felt in Nevada, that "a substantial part of the events giving rise to

1  the claim occurred in Nevada); *see also Fiore*, 688 F.3d 558, 587 (9th Cir. 2012) ("In

2  *Myers*, the fact that at least one of the harms suffered by Plaintiffs was felt in Nevada was

3  sufficient to make venue proper in Nevada.") (internal quotations and alterations

4  omitted).  The fact that Defendants' alleged tortious conduct was directed at Fluke, a

5  resident of the Western District of Washington, is sufficient to show that a substantial

6  part of the events giving rise to Fluke's claims occurred within this judicial district.[11]

7  *See, e.g.*, *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1 (1st Cir. 2009)

8  (court is not required to determine the best venue, only a proper venue; venue could be

9  found in forum state, where plaintiff was headquartered and where one of the harms in a

10  trade secret case was alleged to have occurred, even though the defendants were residents

11  of two other states);  *Meyers v. DCT Techs., Inc.*, No. 11-cv-05595 RBL, 2012 WL

12  1416264, at *9 (W.D. Wash. Apr. 24, 2012) (ruling that venue was appropriate in

13  Washington where plaintiff relied upon defendants' misrepresentations and suffered harm

14  in Washington).[12]  Accordingly, the court denies Defendants' motion to dismiss for

15  improper venue.

16  _____

17  [11] Venue is not limited to the district with the most substantial events or omissions;
    rather, § 1391 contemplates that venue can be appropriate in more than one district.  *See Nw*

18  *Envtl. Def. Center v. U.S. Army Corps of Eng'rs*, No. 10-1129-AC, 2011 WL 1527598, at *7 (D.
    Or. Apr. 20, 2011); *Unicru, Inc. v. Brenner*, No. Civ. 04-248-MO, 2004 WL 785276, at *12 (D.

19  Or. Apr. 13, 2004).

20  [12] *See also Open Road Ventures, LLC v. Daniel*, No. C–09–02041 RMW, 2009 WL
    2365857, at *4 (N.D. Cal. July 30, 2009) ("Because the injury occurred in California, venue is

21  proper [t]here . . . ."); *Williamson v. American Mastiff Breeders Council*, No. 3:08-CV-336-ECR-
    VPC, 2009 WL 634231, at *7 (D. Nev. Mar. 6, 2009) ("The defendants' actions . . . were
    directed at [the plaintiff] in Nevada; [the plaintiff] felt the harm in Nevada; venue is proper in

22  Nevada."); *Mathis v. Cnty. of Lyon*, No. 2:07-CV-00628-KJD-GWF, 2007 WL 3230142, at *1

1        **D.  Fluke's Discovery Motion**

2        Fluke has moved for an order granting it expedited discovery from Defendants,

3    along with an order directing Defendants to preserve all relevant evidence.  (*See*

4    *generally* Disc. Mot.)  The court will address each request in turn.

5                      **1.   Expedited Discovery**

6        Fluke asserts that expedited discovery is necessary because it intends to move for

7    a preliminary injunction and absent expedited discovery "it will be forced to present its

8    case at the hearing . . . on an incomplete record . . . ."  (*Id.* at 4, ¶ 17.)  Defendants

9    respond that Fluke has not yet moved for either a temporary restraining order or a

10   preliminary injunction and has otherwise failed to meet the standard for an order

11   authorizing expedited discovery.  (*See generally* Disc. Resp.)

12       Pursuant to Federal Rule of Civil Procedure 26(d), a party "may not seek

13   discovery from any source" prior to the conference required by Rule 26(f).   Fed. R Civ.

14   P. 26(d)(1).  Courts within the Ninth Circuit generally use a "good cause" standard to

15   determine whether to permit discovery prior to a Rule 26(f) conference.  *See, e.g.*,

16   *Millennium TGA, Inc. v. Doe*, No. 2:11–cv–03080 MCE KJN, 2012 WL 968074 at *2,

17   n.4 (E.D. Cal. Mar. 21, 2012) ("District courts within the Ninth Circuit have permitted

18   expedited discovery prior to the Rule 26(f) conference upon a showing of 'good

19

---

20   (D. Nev. Oct. 24, 2007) ("The locus of the injury has been deemed to be a substantial part of the
21   events giving rise to the claim in a tort action."); *City of L.A. v. Cnty. of Kern*, No. CV 06 5094
     GAF(VBKX), 2006 WL 3073172, at *6 (C.D. Cal. Oct. 24, 2006) ("Plaintiffs' alleged injuries in
22   the Central District constitute substantial events giving rise to the cause of action, and thus venue
     is proper . . . .").

1  cause.'"); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal.

2  2002).  "Good cause may be found where the need for expedited discovery, in

3  consideration of the administration of justice, outweighs the prejudice to the responding

4  party."  *Semitool*, 208 F.R.D. at 276.  Although the "good cause" standard may be

5  satisfied where a party seeks a preliminary injunction, it is not automatically granted

6  merely because a party seeks this type of relief.  *Am. Legalnet, Inc. v. Davis*, 673 F. Supp.

7  2d 1063, 1066 (C.D. Cal. 2009).  In considering whether good cause exists, factors courts

8  may consider include "(1) whether a preliminary injunction is pending; (2) the breadth of

9  the discovery request; (3) the purpose for requesting the expedited discovery; (4) the

10  burden on the defendants to comply with the requests; and (5) how far in advance of the

11  typical discovery process the request was made."  *Id.* at 1067.

12          The first factor does not weigh in favor of finding "good cause."  Although Fluke

13  asserts that it needs expedited discovery for purposes of filing a motion for preliminary

14  injunction, no such motion has been filed despite the fact that this action has been

15  pending for nearly two and a half months.  Other courts have granted such relief after a

16  motion for preliminary injunction has been filed but prior to the hearing in order to

17  ensure presentation of a full and complete record to the court.  *See, e.g.*, *Quia Corp. v.*

18  *Mattel, Inc.*, No. C10-01902 JF (HRL), 2010 WL 2179149, at *1-2 (N.D. Cal. May 27,

19  2010) (granting in part defendants' motion for expedited discovery in connection with

20  plaintiff's pending motion for a temporary restraining order and a preliminary

21  injunction); *Kremen v. Cohen*, No. 5:11-cv-05411-LHK, 2011 WL 6113198, at *10 (N.D.

22  Cal. Dec. 7, 2011) (granting plaintiff's request for expedited discovery "related to his

ORDER- 24

1  motion for a preliminary injunction and . . . narrowly tailed to discover evidence

2  necessary [for that motion]").  Although there are undoubtedly circumstances where

3  granting a motion for expedited discovery in the absence of a motion for preliminary

4  equitable relief is warranted, the absence of such a pending motion in this case

5  undermines a finding of good cause.

6        The second and fourth factors—the breadth of the requests and the burden on the

7  opposing party—also weigh against a of finding "good cause."  Contrary to its assertion

8  that it seeks discovery "limited in scope and narrowly tailed to the issues underlying

9  Fluke's claims for preliminary relief" (Disc. Mot. at 4, ¶ 18), Fluke seeks wide, sweeping

10  discovery related to its case in total.  For example, in its proposed interrogatories to each

11  defendant, Fluke seeks the identity of every witness Defendants intend to call at any

12  hearing, deposition, or trial.  (Disc. Mot. Ex. A at 7, Ex. C at 6, Ex. E at 6.)  Fluke also

13  seeks the identity of all opinion witnesses and all exhibits or evidence that defendants

14  intend to use at any hearing, deposition, or at trial.  (*Id.* Ex. A at 7, Ex. C at 6, Ex. E at 7.)

15  In its proposed requests for production of documents, Fluke seeks "[a]ny and all

16  [d]ocuments and/or materials that you intend to use or offer into evidence at any hearing,

17  deposition or trial in this matter."  (*Id.* Ex. B at 8, Ex. D at 7, Ex. F at 7.)  Finally, Fluke

18  seeks to image "any and all electronic devices [of Defendants] that *may* contain Fluke's

19  confidential information and/or trade secrets, including but not limited to any home

20  and/or work computers, hard drives, flash drives, iPod, iPads, PDAs and other external

21

22

1   storage devices." (*See* Proposed Order (Dkt. # 9-1) at 1 ¶ 3.)[13]  Fluke's proposed

2   discovery requests are too broad for the court to plausibly conclude that they are

3   "narrowly tailored" to the issues Fluke envisions raising in a motion for preliminary

4   injunction.  Given the broad scope of the requested discovery, the court also concludes

5   that it would be overly burdensome to require Defendants to respond in an expedited

6   fashion.

7          The third factor, Fluke's asserted purposes for requesting expedited discovery,

8   also does not weigh in its favor.  Fluke's asserted purposes are (1) "to present the facts of

9   this case to the Court as completely as possible . . . [with respect to] Fluke's motion for

10  preliminary injunction," and (2) "to discover the full extent of Defendants' unlawful

11  activities and the corresponding damage being done or already done to Fluke."  (Disc.

12  Mot. at 3, ¶ 13.)  As Defendants note, after nearly two and half months, Fluke has not

13  filed any motion for preliminary relief—either a motion for a temporary restraining order

14  or a motion for preliminary injunction.  Thus, there is no pending hearing for which to

15  prepare making expedited discovery necessary.  Further, Fluke's purpose—to discover

16  the extent of the alleged harm—is not a legitimate basis for expedited discovery because

17  it merely attempts to substitute expedited discovery for normal discovery.  *See, e.g.*,

18  *Palermo v. Underground Solutions, Inc.*, No. 12cv1223–WQH (BLM), 2012 WL

19  2106228, at *3 (S.D. Cal. June 11, 2012) (Plaintiff's proposed expedited discovery

20

21          [13] The court notes that this request is so broad that it would include computers and other
    electronic devices that may be used by non-parties to this lawsuit (such as Defendants' family

22  members) and makes no provision with respect to the privacy and confidentiality of these non-
    parties.

1   "requests are not narrowly tailored to obtain evidence relevant to [Plaintiff's] motion for

2   preliminary injunction," but "[i]nstead . . . appear[] to be a vehicle to conduct the entirety

3   of his discovery prior to the Rule 26(f) conference.") (citing *Better Packages, Inc. v.*

4   *Zheng*, 2006 WL 1373055, at *5 (D.N.J. May 17, 2006) (finding that granting expedited

5   discovery requests "would lead to the parties conducting nearly all discovery in an

6   expedited fashion under the premise of preparing for a preliminary injunction hearing,

7   which is not the purpose of expedited discovery")).

8          Finally, the court has ordered the parties to conduct their Federal Rule of Civil

9   Procedure 26(f) conference no later than March 4, 2013.  (Min. Ord. (Dkt. # 16) at 1.)

10  Thus, Fluke may begin the discovery process in less than one month.  For the foregoing

11  reasons, Fluke has failed to show good cause for expedited discovery in this matter.

12  Rather, the broad discovery that Fluke seeks "should be pursued more properly within the

13  structure afforded by a court-approved scheduling order."  *Am. Legalnet, Inc.*, 673 F.

14  Supp. 2d at 1072 (citation omitted).

15                     **2.   Preservation Order**

16          Fluke also seeks a preservation order "to preserve all evidence relevant to the facts

17  and circumstances alleged in Fluke's Complaint."  (Disc. Mot. at 5, ¶ 20.)  Federal Rule

18  of Civil Procedure 26(f) requires the parties to discuss preservation issues during their

19  Rule 26 conference.  Fed. R. Civ. P. 26(f)(2).  "However, as the Rule 26 Advisory

20  Committee notes make clear, '[t]he requirement that the parties discuss preservation does

21  not imply that courts should routinely enter preservation orders.'"  *Margolis v. Dial*

22  *Corp.*, No. 12–CV–0288–JLS (WVG), 2012 WL 2588704, at *2 (S.D. Cal. July 3, 2012)

1   (quoting 2006 Advisory Comm. Notes to Rule 26(f)).  Although federal courts have the

2   implied or inherent authority to issue preservation orders as part of their general authority

3   to manage their own affairs so as to achieve the orderly and expeditious disposition of

4   cases, because of their very potency, inherent powers must be exercised with restraint and

5   discretion.  *Am. Legalnet, Inc.*, 673 F. Supp. 2d at 1071 (citing cases).

6          In determining whether to grant a request for a preservation order, some courts

7   have adopted a two prong test that requires the proponent to demonstrate that the order is

8   necessary and not unduly burdensome.[14]  *Id.* at 1071-72 (citing *Pueblo of Laguna v.*

9   *United States*, 60 Fed. Cl. 133, 135-36 (2004)).  Other courts have adopted a balancing

10  test considering three factors:  (1) the level of concern the court has for the continuing

11  existence and maintenance of the integrity of the evidence in question in the absence of

12  an order directing preservation of the evidence; (2) any irreparable harm likely to result to

13  the party seeking the preservation of evidence absent an order directing preservation; and

14  (3) the capability of an individual, entity, or party to maintain the evidence sought to be

15  preserved, not only as to the evidence's original form, condition or contents, but also the

16  physical, spatial and financial burdens created by ordering evidence preservation.  *Id.* at

17  1072 (quoting *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220

18  ─────────────────────

19          [14] "To meet the first prong of this test, the proponent ordinarily must show that absent a
    court order, there is significant risk that relevant evidence will be lost or destroyed—a burden
20  often met by demonstrating that the opposing party has lost or destroyed evidence in the past or
    has inadequate retention procedures in place.  More than that, the proponent must show that the
21  particular steps to be adopted will be effective, but not overbroad-the court will neither lightly
    exercise its inherent power to protect evidence nor indulge in an exercise in futility."  *Am.*
22  *LegalNet, Inc.*, 673 F. Supp. 2d at 1072 (quoting *Pueblo of Laguna v. United States*, 60 Fed. Cl.
    133, 138 (2004)).

1   F.R.D. 429, 433-34 (W.D. Pa. 2004)).  "The difference between these two tests lies in

2   what the moving party must show with respect to the content of the evidence that is in

3   danger of being destroyed.  However, the distinction is more apparent than real."  *Id.*

4   (quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370 (S.D.N.Y. 2006)).

5          Here, Fluke has failed to meet its burden under either standard.  First, Fluke has

6   presented no basis for the court to conclude that any evidence has been lost or destroyed.

7   Fluke has not even alleged this circumstance.  (*See generally* Disc. Mot.)  Second, Fluke

8   has made no showing that the order would not be burdensome.  (*See generally id.*)

9   Accordingly, the court finds that entry of a preservation order is unwarranted at this time

10  and denies Fluke's request for a preservation order.  *See id.* at 1072-73 (denying a motion

11  on same grounds).

12         The court notes that "[l]itigants owe an uncompromising duty to preserve what

13  they know or reasonably should know will be relevant evidence in a pending lawsuit even

14  though no formal discovery requests have been made and no order to preserve evidence

15  has been entered."  *United Factory Furniture Corp. v. Alterwitz*, No. 2:12–cv–00059–

16  KJD–VCF, 2012 WL 1155741, at *3 (D. Nev. Apr. 6, 2012) (internal quotations

17  omitted).  This includes preserving electronically stored information that would otherwise

18  be automatically deleted and may extend to personal and home computers and other

19  devices.  *See id.* (citing *Se. Mech. Servs., Inc. v. Brody*, 657 F.Supp.2d 1293, 1300 (M.D.

20  Fl. 2009) (holding that the "wiping" of laptops and Blackberries led to spoliation of

21  evidence).   Fluke filed its complaint on November 28, 2012, and Defendants appeared in

22  this action on December 21, 2012.  (*See* Dkt. ## 1, 11.)  Defendants' duty to preserve

1  evidence attached at least by this later date, if not before.  *See United Factory Furniture*

2  *Corp.*, 2012 WL 1155741, at *3.  Absent any evidence to the contrary, the court assumes

3  that all parties have complied with these obligations.

4  **IV.    CONCLUSION**

5       Based on the foregoing, the court DENIES Defendants' motion to dismiss for lack

6  of personal jurisdiction and for improper venue (Dkt. # 12).  The court also DENIES

7  Fluke's motion for expedited discovery (Dkt. # 9).

8       Dated this 13th day of February, 2013.

9

10

11  _____

12  JAMES L. ROBART
    United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER- 30