UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FLUKE ELECTRONICS CORPORATION, | CASE NO. C12-2082JLR |
| Plaintiff/Counter-Defendant, | ORDER DENYING MOTION TO DISMISS OR STRIKE DEFENDANTS' COUNTERCLAIMS |
| v. | |
| CORDEX INSTRUMENTS, INC., et al., | |
| Defendants/Counter-Plaintiffs, | |
| v. | |
| DANAHER CORPORATION, | |
| Third-Party Defendant. | |

ORDER- 1

# I.   INTRODUCTION

Before the court is Plaintiff/Counter-Defendant Fluke Electronics Corporation ("Fluke") and Third-Party Defendant Danaher Corporation's ("Danaher") motion to strike or dismiss Defendants/Counter-Plaintiffs CorDEX Instruments ("CorDEX"), Scott Lang, and Gregg Purple's counterclaims seeking declaratory judgment.[1]  (*See* Mot. (Dkt. # 29); *see also* Ans. (Dkt. # 26) ¶¶ 130, 134.)  Having reviewed the motion, all submissions filed in support of or in opposition thereto, the balance of the record, and the applicable law, and being fully advised, the court DENIES Fluke and Danaher's motion to strike or dismiss.

# II.   BACKGROUND

Fluke is a manufacturer and distributor of electronics incorporated in Delaware and based in Everett, Washington (Mayday Decl. (Dkt. # 15) ¶ 5), and a subsidiary of Danaher, which has over 200 subsidiaries worldwide (CorDEX Mot. to Dismiss Ex. D (Dkt. # 12-1) at 16-24; Corporate Disclosure Statement (Dkt # 2)).  Mr. Lang and Mr. Purple are both former Fluke employees whom CorDEX now employs as salesmen. (CorDEX Mot. to Dismiss Ex. A (Dkt. # 12-1) ¶ 16; *id.* Ex. B (Dkt. # 12-1) ¶ 17.)  Mr. Lang lived in both Florida and Colorado during his employment with Fluke.  (*Id.* Ex. B

---

[1] Although the parties refer to Danaher as a Counter-Defendant, Danaher is more properly referred to as a third-party defendant because it was not a party to the original complaint.  *See* Fed. R. Civ. P. 14(a)(2).  Although CorDEX, Mr. Lang and Mr. Purple thus have counterclaims against Fluke and third-party claims against Danaher, for convenience the court will refer to all of the claims as counterclaims.

1  ¶¶ 8-9, 15.)  Mr. Purple was based out of Texas for the duration of his employment with

2  Fluke.  (*Id.* Ex. A ¶¶ 8-9, 15.)

3      Fluke is suing CorDEX, Mr. Lang, and Mr. Purple for misappropriation of trade

4  secrets (Compl. (Dkt. # 1) ¶ 74), CorDEX and Mr. Purple for tortious interference with

5  Fluke's business (*id.* ¶ 81), and Mr. Purple and Mr. Lang for breach of their non-compete

6  agreements (*id.* ¶ 87).  The complaint stems from Fluke's purchase of the British

7  electronics company Hawk IR and retention of several Hawk IR employees including Mr.

8  Lang, Mr. Purple, and Hawk IR's owner, Tony Holliday.  (*Id.* ¶ 1.)  The complaint

9  alleges that when Mr. Holliday left Fluke to found CorDEX and subsequently hired Mr.

10  Lang and Mr. Purple away from Fluke, Mr. Holliday took with him intellectual property

11  belonging to Fluke, and undercut Fluke's business.  (*Id.* ¶¶ 6-7.)

12      Both Mr. Lang and Mr. Purple became Fluke employees when Fluke bought Hawk

13  IR, for which they were working at the time.  (CorDEX Mot. to Dismiss Ex. A ¶ 2; *id.*

14  Ex. B ¶ 2.)  Fluke employed Mr. Lang and Mr. Purple as salesmen.  (Mayday Decl. ¶ 7.)

15  Both Mr. Lang and Mr. Purple signed non-compete agreements with Danaher.  (CorDEX

16  Mot. to Dismiss Ex. B ¶ 14; *id.* Ex. A ¶ 14.)  The non-compete agreements appear on

17  Danaher letterhead and are framed in reference to Danaher and its subsidiaries.

18  (Agreements Ex. B (Dkt. # 5) at 32; *id.* (Dkt. # 5) Ex. C at 39.)  The agreements provide

19  that for the duration of Mr. Lang and Mr. Purple's employment with Fluke and for 12

20  months thereafter they will not act in competition with Danaher and its subsidiaries.  (*Id.*

21  Ex. B at 34-35; *id.* Ex. C at 40-41.)  The agreements state that they are intended to benefit

22  "each and every subsidiary, affiliate or business unit" of Danaher for which Mr. Lang and

1    Mr. Purple performed services, had customer contact, or received confidential

2    information.  (*Id.* Ex. B at 37; *id.* Ex. C at 44.)  Mr. Lang was laid off by Fluke in

3    November 2011, and in January 2012 began working for CorDEX.  (CorDEX Mot. to

4    Dismiss Ex. B ¶¶ 15-16.)  Mr. Purple continued to work for Fluke until his resignation in

5    April 2012, after which he joined CorDEX.  (*Id.* Ex. A ¶¶ 15-16.)

6         In its complaint, Fluke alleges that the non-compete agreements with Mr. Lang

7    and Mr. Purple are valid and enforceable.  (Compl. ¶ 85.)  It further alleges that Mr. Lang

8    and Mr. Purple threaten to breach their contracts not to compete by acting in competition

9    with Fluke during the time period of the restriction on competition.  (*Id.* ¶ 87.)  In their

10   answer, CorDEX, Mr. Lang, and Mr. Purple deny that the non-compete agreements are

11   valid and enforceable.  (Ans. ¶ 85.)  In their affirmative defenses, CorDEX, Mr. Lang and

12   Mr. Purple assert that the non-compete agreements are "void, voidable, and/or

13   unenforceable."  (*Id.* ¶ 102.)  CorDEX, Mr. Lang, and Mr. Purple have also filed

14   counterclaims which add Danaher to the action as a third-party defendant.  (*Id.* ¶ 104.)

15   The counterclaims allege that each non-compete agreement is void because it is

16   overbroad.  (*Id.* ¶¶ 129, 133.)  They ask for declaratory judgment that the non-compete

17   agreements are void or in the alternative that the court reform the agreements to comply

18   with the law.  (*Id.* ¶¶ 130, 134-35.)  The counterclaims also ask the court to award

19   recovery of attorney's fees to CorDEX, Mr. Lang, and Mr. Purple.  (*Id.* ¶¶ 137-140.)  In

20   the present motion, Fluke and Danaher ask the court to strike or dismiss the

21   counterclaims as duplicative of CorDEX, Mr. Lang, and Mr. Purple's answer and

22   affirmative defenses.  (Mot. at 1-2.)

1          III.    ANALYSIS

2     **A. Standards of Review**

3          Fluke and Danaher move to strike or dismiss CorDEX, Mr. Lang, and Mr.

4     Purple's counterclaims on the basis of Federal Rule of Civil Procedure 12(b)(6) or

5     alternatively on the basis of Rule 12(f).  (Mot. at 1.)  Under Rule 12(f), "the court may

6     strike from a pleading any insufficient defense or any redundant, immaterial, or

7     scandalous matter."  Fed. R. Civ. P. 12(f).  *See, e.g.*, *Stickrath v. Globalstar, Inc.*, No.

8     C07-1941 TEH, 2008 WL 2050990, at *7 (N.D. Cal. May 13, 2008) (granting the

9     plaintiff's Rule 12(f) motion to strike a counterclaim for declaratory judgment as

10    redundant of the defendant's defenses).  In the context of a Rule 12(f) motion, the

11    pleading must be viewed in the light most favorable to the pleader.  *Legal Solutions, Inc.*

12    *v. Buntrock*, No. C 07-04976 CRB, 2008 WL 111237, at *2 (N.D. Cal. Jan. 9, 2008); *In*

13    *re 2TheMart.com Inc. Sec. Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).  Furthermore,

14    "the motion may be denied if . . . there is any doubt whether pleaded material is

15    redundant and some party may be prejudiced by striking it." *Sagan v. Apple Computers,*

16    *Inc.*, 874 F. Supp. 1072, 1079 (C.D. Cal. 1994) (internal quotation marks omitted); *see*

17    *also* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §

18    1382 (3d ed. 2004); *In re 2TheMart.com*, 114 F. Supp. 2d at 965 ("If there is *any doubt* as

19    to whether the allegations might be an issue in the action, courts will deny the motion.")

20    (emphasis in original).  Motions to strike are generally disfavored as a delaying tactic.

21    *Baroness Small Estates, Inc. v. BJ's Rest., Inc.*, No. SACV 11-00468-JST EX, 2011 WL

22

1  3438873, at *5 (C.D. Cal. Aug. 5, 2011); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478

2  (C.D. Cal. 1996).

3          Many courts have also used Rule 12(b)(6) to dismiss duplicative counterclaims.

4  *See, e.g.*, *Englewood Lending Inc. v. G & G Coachella Invs., LLC*, 651 F. Supp. 2d 1141,

5  1145-46 (C.D. Cal. 2009) (dismissing two counterclaims for declaratory judgment as

6  duplicative of a party's defenses); *Atlantic Recording Corp. v. Serrano*, No. 07-CV-

7  1824WJMA, 2007 WL 4612921, at *4 (S.D. Cal. Dec. 28, 2007) (dismissing a

8  counterclaim for declaratory relief as duplicative of an issue that would be decided in

9  adjudicating the original complaint).  Under Rule 12(b)(6), a court may dismiss a claim

10  for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

11  Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal

12  theory or the absence of sufficient facts alleged under a cognizable legal theory.

13  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  When considering

14  a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light

15  most favorable to the non-moving party.  *Livid Holdings Ltd. v. Salomon Smith Barney,*

16  *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded

17  allegations of material fact as true and draw all reasonable inferences in favor of the

18  plaintiff.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th

19  Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual

20  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

21  *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

22  570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.

ORDER- 6

2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Although a court may use Rule 12(b)(6) to dismiss a duplicative counterclaim, it makes more sense to use Rule 12(f).  In the case of a duplicative counterclaim, the issue is not that the counterclaim is insufficient to state a cognizable legal theory as required by Rule 12(b)(6), but rather that the legal and factual issues contained in the counterclaim are redundant with issues already present in the proceeding.  In any event, the standards under either rule are similar, and the result of the motion would be the same under either standard.  *See Daily v. Fed. Ins. Co.*, No. C 04-3791 PJH, 2005 WL 14734, at *6 (N.D. Cal. Jan. 3, 2005) (referring to a motion to strike and a motion to dismiss in the context of a duplicative counterclaim as "in this case . . . the same thing").[2]

In general, a court should strike a counterclaim for declaratory judgment when "it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim."  *Stickrath*, 2008 WL 2050990, at *4; *see also Ortho-Tain, Inc. v.*

---

[2]  Fluke and Danaher also discuss the court's discretion to dismiss the counterclaims as requests for declaratory judgment.  (Mot. at 3-4.)  Indeed, "courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment."  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008).  A court may decide to exercise this discretion when an action for declaratory judgment "will serve no useful purpose."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).  In this case, the court chooses not to exercise its discretion to dismiss an action for declaratory judgment.  "The purpose of the Declaratory Judgment Act is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish."  *Hal-Roach Studios, Inc. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1989).  *See also Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1056–67 (9th Cir. 2008) (reversing the dismissal of a declaratory judgment claim because the claim served a "useful purpose").

1   *Rocky Mountain Orthodontics, Inc.*, No. 05 C 6656, 2006 WL 3782916, at *3 (N.D. Ill.

2   Dec. 20, 2006) (dismissing a counterclaim as duplicative and stating that "district courts

3   have dismissed counterclaims . . . where they have found them to be repetitious of issues

4   already before the court via the complaint or affirmative defenses").  However, "the court

5   should focus on whether the counterclaims serve any useful purpose."  *Stickrath*, 2008

6   WL 2050990, at *4 (internal quotation marks omitted); *Pettrey v. Enter. Title Agency,*

7   *Inc.*, No. 1:05-CV-1504, 2006 WL 3342633, at *3 (N.D. Ohio Nov. 17, 2006); *see also*

8   *Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, 2012 WL 395734, at *4 (W.D.

9   Wash. Feb. 6, 2012) (asserting that a counterclaim for declaratory relief serves a "distinct

10  and useful purpose from other claims in the litigation" as one reason to decline to dismiss

11  it).  Furthermore, courts often decline to strike counterclaims at an early stage in litigation

12  if it is difficult to tell if the counterclaim is duplicative of other pleadings.  *See Stickrath*,

13  2008 WL 2050990, at *5 ("[E]arly dismissal of a counterclaim under Rule 12(f) might be

14  premature in some cases."); *Fid. Nat'l Title Ins. Co. v. Captiva Lake Investments, LLC*,

15  788 F. Supp. 2d 970, 973 (E.D. Mo. 2011) ("[I]f it cannot be determined early in the

16  litigation if the counterclaim is identical to the complaint, the safer course for the court to

17  follow is to deny a request to dismiss a counterclaim for declaratory relief.") (internal

18  quotation marks omitted).

19      **B.  The Counterclaims Serve a Useful Purpose**

20      CorDEX, Mr. Lang, and Mr. Purple's counterclaims may survive a Rule 12(b)(6)

21  or Rule 12(f) motion if the court determines that they serve a useful purpose despite

22  bringing up the same facts and legal issues as the complaint and answer.  CorDEX, Mr.

ORDER- 8

1   Lang, and Mr. Purple assert three reasons the court should not strike their counterclaims

2   as duplicative:  (1) they assert that their counterclaims are not duplicative because they

3   expressly ask the court to reform the non-compete agreements if they are found to be too

4   broad to be enforceable (Resp. (Dkt. # 30) at 7); (2) they assert that they add a new issue

5   in their counterclaims by expressly asking for recovery of their attorney's fees (*id.* at 8);

6   and (3) they assert that by adding Danaher as a party, their counterclaims serve a useful

7   purpose by expanding the *res judicata* effects of a judgment on a merits of this case (*id.*

8   at 6-7).[3]  The court considers each reason in turn.

9       **1.  Reforming the Non-Compete Agreements**

10          CorDEX, Mr. Lang, and Mr. Purple initially assert that their counterclaims are not

11   duplicative because they explicitly ask the court to reform the non-compete agreements.

12   The court, however, could narrow the non-compete agreements to bring them into

13   compliance with the law should it find that they are too broad irrespective of the

14   counterclaims.  This is true under both Texas and Washington law.[4]  Section 15.51(c) of

15   the Texas Business and Commercial Code requires a court to reform a non-compete

16   agreement to make it comply with law if the court finds the agreement overbroad with

17   respect to scope, time or geography.  Tex. Bus. & Com. Code § 15.51(c).  *See also*

---

18

19          [3] CorDEX, Mr. Lang, and Mr. Purple also argue that Danaher is a necessary party to the
     litigation via Federal Rule of Civil Procedure 19.  (Resp. at 5.)  However, both sides note in their
     briefs that there is no Rule 19 motion currently before the court, and thus for the purposes of this

20   motion it is unnecessary to decide whether Danaher is a required party per Rule 19.  (*Id.*; Reply
     (Dkt. # 31) at 2.)

21

          [4] CorDEX, Mr. Lang, and Mr. Purple assert that Texas law will govern at least Mr.
22   Purple's agreement.  (Resp. at 8.)  Accordingly, for the purposes of this motion the court
     analyzes Texas law as well as Washington law with respect to the non-compete agreements.

1   *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 621 (S.D. Tex. 2011) (noting that in

2   a prior proceeding, the court had "reformed the covenant not to compete in accordance

3   with Texas law"). Washington law also allows the court to reform a non-compete

4   agreement it finds to be too broad. *See Hometask Handyman Servs., Inc. v. Cooper*, No.

5   C07-1282RSL, 2007 WL 3228459, at *4 (W.D. Wash. Oct. 30, 2007) (applying

6   Washington law and noting that "the Court will modify the covenant not to compete

7   accordingly"). The non-compete agreements' reasonableness is already before the court.

8   (*See* Ans. ¶¶ 85, 103.) Accordingly, the court concludes that this ground does not justify

9   the otherwise duplicative counterclaims.

10       **2. Awarding Attorney's Fees**

11       CorDEX, Mr. Lang, and Mr. Purple also argue that the counterclaims add a new

12   legal issue by expressly asking the court to award attorney's fees to them. The court,

13   however, could award attorney's fees even if not specifically requested in the

14   counterclaims. There are several grounds on which the court could award attorney's fees

15   to CorDEX, Mr. Lang, and Mr. Purple under Washington law. A court may award

16   attorney's fees due to bad faith or maliciousness in an action for misappropriation of

17   trade secrets. RCW § 19.108.040. If a contract provides that a court should award

18   attorney's fees to one party if the party successfully enforces the contract, a court may

19   award attorney's fees to any prevailing party. RCW § 4.84.330. The relevant contracts

20   in this action both have provisions awarding costs to Danaher if Danaher successfully

21   enforces the agreements. (Agreements Ex. B at 35-36; *id.* Ex. C at 42.) Finally, a court

22   may require a non-prevailing party to pay the prevailing party's attorney's fees if it finds

that the action is frivolous.  RCW § 4.84.185.  Section 15.51(c) of the Texas Business &

Commercial Code also allows a court to award attorney's fees if it finds that a promisee

knew at the time of contracting that the non-compete agreement was unreasonably broad.

Tex. Bus. & Com. Code § 15.51(c).  None of these statutes require a counterclaim in

order for the court to consider and award attorney's fees.

### 3.  *Res Judicata*

CorDEX, Mr. Lang, and Mr. Purple's third argument is that adding Danaher as a

third-party defendant serves a useful purpose regarding *res judicata* thereby permitting

the counterclaims to survive a Rule 12(f) or Rule 12(b)(6) motion.  It is true that

corporate affiliation or ownership may provide for such an identity of interests between

parties that one party may be bound by the *res judicata* effects of a judgment in litigation

involving another party given a sufficiently close relationship. *See In re Gottheiner,* 703

F.2d 1136, 1139 (9th Cir. 1983) (holding that *res judicata* barred a suit against the owner

of a corporation because another court had previously adjudicated the claims with the

corporation as a party); *Astron Indus. Assocs., Inc. v. Chrysler Motors Corp.*, 405 F.2d

958, 961 (5th Cir. 1968) (holding that *res judicata* barred Astron from bringing a claim

because one of its subsidiaries had previously litigated the claim).[5]  Privity between two

---

[5] Due to the global scope of Danaher's subsidiaries and the hypothetical nature of any
future proceedings, it is difficult to predict the *res judicata* rules that would apply in a future
proceeding and whether claim preclusion or issue preclusion would be a more appropriate
framework.  In Washington, courts apply federal rules of preclusion to determine the preclusive
effects of the judgment of a federal court sitting in diversity. *Davis Wright & Jones v. Nat'l
Union Fire Ins. Co. of Pittsburgh, Pa.*, 709 F. Supp. 196, 198 (W.D. Wash. 1989) (citing
*Alcantara v. Boeing Co.*, 705 P.2d 1222, 1225 (Wash. Ct. App. 1985)) *aff'd sub nom. Davis*

1  parties is necessary in order for *res judicata* to prevent one party from re-litigating a

2  claim that the other party previously litigated.  *Gottheiner,* 703 F.2d at 1139.  To

3  establish privity, the party barred from re-litigating must have "been so closely related to

4  the interest of the [other] party to be fairly considered to have had his day in court."

5  *Gottheiner*, 703 F.2d at 1139.

6       Litigation solely involving Fluke, however, may not bar claims by Danaher's other

7  global subsidiaries through *res judicata*.[6]  Unlike in *Gottheiner* or *Astron*, there is no

8  corporate ownership relationship providing for an identity of interests between Fluke and

9  other Danaher subsidiaries.  *Gottheiner,* 703 F.2d at 1138; *Astron,* 405 F.2d at 959.  *See*

10 *also Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1406 (9th Cir. 1993) (holding that there

11 was not sufficient privity between former sibling subsidiaries to produce *res judicata*).

12

13 *Wright & Jones v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 897 F.2d 1021 (9th Cir. 1990).  In the Ninth Circuit, a prior proceeding produces claim preclusion when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties."  *Owens v.*
14 *Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001) (internal quotation marks omitted).  A prior proceeding produces issue preclusion when "(1) there was a full and fair
15 opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person
16 against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1050 (9th Cir. 2008).
17 Crucially in the context of this motion, both claim and issue preclusion require that the party barred by *res judicata* was a party to the previous litigation, or was in privity with a party to the
18 previous litigation.

19      [6] The non-compete agreements in question specifically name Danaher subsidiaries with which Mr. Purple and Mr. Lang have had business interactions as intended beneficiaries of the
20 agreements.  (Agreements Ex. B at 37; *id.* Ex. C at 44.)  As intended third-party beneficiaries of a contract, Danaher subsidiaries would have standing to sue to enforce the contract under both
21 Texas and Washington law.  *See MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999) (clarifying Texas law regarding third-party beneficiaries); *Warner v.*
22 *Design & Build Homes, Inc.*, 114 P.3d 664, 670 (Wash. Ct. App. 2005) (clarifying Washington law regarding third-party beneficiaries).

1    Furthermore, as CorDEX, Mr. Lang, and Mr. Purple point out, it is difficult to predict

2    what rules of claim or issue preclusion would apply to a suit by a Danaher subsidiary

3    given the global scope of Danaher's over 200 subsidiaries.  (Resp. at 7.)

4            Additionally, the corporate relationship between Fluke and Danaher may not be

5    sufficient for *res judicata* to bind Danaher to the results of litigation solely involving

6    Fluke.  Under certain circumstances, litigation involving a subsidiary company will not

7    be sufficient to produce *res judicata* in litigation involving a parent company.  *See*

8    *Paramount Farms, Inc. v. Ventilex B.V.*, 735 F. Supp. 2d 1189, 1191 (E.D. Cal. 2010),

9    *aff'd sub nom. Paramount Farms Int'l LLC v. Ventilex B.V.*, 500 F. App'x 586 (9th Cir.

10   2012) (holding that prior arbitration against a subsidiary of Ventilex BV did not produce

11   sufficient preclusive effect on Ventilex BV to award summary judgment to Paramount

12   Farms).[7]  In *Paramount Farms*, an arbitrator had previously awarded Paramount Farms

13

14   _____

15       [7] *Paramount Farms* applies California *res judicata* law because the preclusion is based
     on a California proceeding.  735 F. Supp. 2d at 1201.  However, the comparison between

16   *Paramount Farms* and the case at hand is appropriate because California *res judicata* law
     contains similar elements as federal *res judicata* law as stated by the Ninth Circuit.  In

17   California, a prior proceeding produces claim preclusion when:

18       (1) A claim or issue raised in the present action is identical to a claim or issue
         litigated in a prior proceeding; (2) the prior proceeding resulted in a final
         judgment on the merits; and (3) the party against whom the doctrine is being

19       asserted was a party or in privity with a party to the prior proceeding.

20   *Paramount Farms*, 735 F. Supp. 2d at 1202.  Issue preclusion requires that:

21       1. The issue sought to be precluded from relitigation must be identical to that
         decided in a former proceeding; 2. The issue must have been actually litigated in
         the former proceeding; 3. The issue must have been necessarily decided in the

22       former proceeding; 4. The decision in the former proceeding must be final and on

1   nearly $5 million for a claim against Ventilex USA for breach of contract and breach of

2   warranty, and a California court had confirmed the arbitration award.  *Id.* at 1198-99.

3   Ventilex USA was a wholly owned subsidiary of Ventilex BV, a Dutch company.  *Id.* at

4   1192.  The district court refused to grant summary judgment to Paramount Farms in a

5   lawsuit against Ventilex BV based on the *res judicata* effects of the arbitration against

6   Ventilex USA because it found that there was a fact issue regarding the existence of

7   privity between the two companies.  *Id.* at 1207.  The court found this because, while

8   Ventilex BV owned Ventilex USA, there were sufficient differences in their operations,

9   such as the failure of the two companies to keep separate corporate documents and the

10  lack of commingling of corporate funds, to dispel the notion that "Ventilex USA is

11  Ventilex BV's alter ego."  *Id.  See also Johnson & Johnson v. Coopervision, Inc.*, 720 F.

12  Supp. 1116, 1124 (D. Del. 1989) (dismissing a claim by Johnson & Johnson for failure to

13  join its subsidiary, Iolab, as a required party because "there is a substantial likelihood that

14  a court would find, at some future date, that Johnson & Johnson and Iolab were not in

15  privity in bringing the instant lawsuit . . . therefore any findings in this case adverse to

16  Iolab would likely have no preclusive effect upon Iolab in a subsequent suit by Iolab

17  against Cooper").

18

19

20           the merits; and 5. The party against whom preclusion is sought must be the same
             as, or in privity with, the party to the former proceeding.
21

22  *Paramount Farms*, 735 F. Supp. 2d at 1202.  The elements of claim and issue preclusion in
    California are substantially similar to those expounded by the Ninth Circuit.  *See supra* note 5.

ORDER- 14

1    The court concludes that the counterclaims, which add Danaher as a third-party

2    defendant, serve a useful purpose because *res judicata* may not bind Danaher to the

3    results of litigation solely involving Fluke.  The record does not reveal enough about the

4    relationship between Fluke and Danaher for the court to be able to determine the

5    existence of factors such as those examined by the court in *Paramount Farms*, including

6    commingling of corporate funds or the existence of separate corporate documents.  735 F.

7    Supp. 2d at 1207.  Thus, the court denies Fluke and Danaher's Rule 12(f) or Rule

8    12(b)(6) motion to strike or dismiss the counterclaims as redundant because CorDex, Mr.

9    Lang, and Mr. Purple's addition of Danaher as a party to this litigation in their

10   counterclaims may serve a useful purpose.

11                          **IV.     CONCLUSION**

12   For the forgoing reasons, the court DENIES Fluke and Danaher's motion to strike

13   or dismiss CorDEX, Mr. Lang, and Mr. Purple's counterclaims (Dkt. # 29).

14   Dated this 7th day of June, 2013.

15

16

17   _____

18   JAMES L. ROBART
     United States District Judge

19

20

21

22

ORDER- 15